Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
01/12/2016 09:04 AM CST

STATE OF NEBRASKA ON BEHALF OF MADDOX S., A MINOR
CHILD, APPELLEE, v. MATTHEW E., DEFENDANT AND
THIRD-PARTY PLAINTIFF, APPELLANT, AND
STEPHANIE S., THIRD-PARTY
DEFENDANT, APPELLEE.

___ N.W.2d ___

Filed January 12, 2016.    No. A-15-080.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Visitation: Appeal and Error.** Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. ____: ____. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.
5. **Child Custody: Appeal and Error.** In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Visitation.** The best interests of the children are the primary and paramount considerations in determining and modifying parenting time.
7. ____. The right of parenting time is subject to continuous review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances.

- 501 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

8. **Child Custody: Words and Phrases.** Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2014) of the Parenting Act defines "joint legal custody" as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health."
9. **Child Custody.** A trial court's decision to award joint legal or physical custody can be made without parental agreement or consent so long as it is in the child's best interests.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed.

Terrance A. Poppe and Andrew K. Joyce, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellant.

Stephanie S., pro se.

Pirtle, Riedmann, and Bishop, Judges.

Bishop, Judge.

Matthew E. appeals from the decision of the district court for Lancaster County modifying the parties' paternity decree.

Prior to this most recent modification, Matthew and Stephanie S. shared joint legal and physical custody of their son, Maddox S. The parties had a "9/5" parenting time schedule so that in every 14-day period Matthew had Maddox 9 days and Stephanie had Maddox 5 days. As for the day-to-day decisionmaking, the parties' parenting plan provided that if the parties were in disagreement on any issue involving Maddox, they were to mediate the issue.

Pursuant to the current modification, the district court maintained the joint legal and physical custody of Maddox with the parties. The court modified the parenting time to reflect an equal 50-50 split with a weekly rotating parenting time schedule; ordered that the party having parenting time be the short-term decisionmaker for Maddox; ordered Stephanie to be the final decisionmaker with regard to extracurricular and sporting activities and recurring or long-term medical,

- 502 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

dental, and eye care needs; and ordered Matthew to be the decisionmaker with regard to Maddox's education and religious upbringing. We affirm.

## BACKGROUND

Matthew and Stephanie are the biological parents of Maddox, born in August 2007. A paternity decree was entered on September 30, 2008. Pursuant to the written stipulation of the parties, the court awarded legal and physical custody of Maddox to Stephanie, subject to Matthew's specific rights of parenting time. The court ordered Matthew to pay $400 per month in child support. Matthew was also ordered to provide health insurance for Maddox as long as it was available through his then-current employer or a subsequent employer at a reasonable cost.

In July 2010, Matthew sought to modify the paternity decree, and a modification order was filed on June 22, 2011. In its June 22 order, the district court approved the written stipulation of the parties and (1) awarded legal and physical custody of Maddox jointly to the parties with parenting time as allocated in the parenting plan, (2) ordered Stephanie to pay $145 per month in child support, and (3) ordered Matthew to provide health insurance for Maddox. Pursuant to the parenting plan, Stephanie was to have parenting time with Maddox "[e]very other weekend beginning on Wednesday at 5:00 p.m. (or the conclusion of school or school activities, whichever [was] later) until the following Monday at 8:00 a.m. (or the commencement of the school day, whichever [was] earlier)." This was a "9/5" parenting plan where, in each 14-day period, Matthew would have parenting time with Maddox 9 days and Stephanie would have parenting time 5 days. During the summers, the parties were to have alternate weeks of parenting time, with the transition occurring on Sundays at 5 p.m. A specific holiday schedule was set forth in the plan. As for the day-to-day decisionmaking, the parties' parenting plan provided that if the parties were in disagreement on

- 503 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

any issue involving Maddox, they were to mediate the issue; however, Matthew was given the authority to decide which school Maddox would attend after discussing the options with Stephanie. The parties also agreed that Maddox would be raised in the Catholic faith. The court ordered that all other terms and provisions "of the Order entered September 30, 2008 and subsequent Order of December 8, 2010 not hereinbefore specifically modified shall remain in full force and effect." (The December 2010 order does not appear in our record.)

In December 2011, Matthew again filed an application to modify, seeking to increase Stephanie's child support obligation and to further reduce her parenting time. In an order filed in June 2012, the district court "overruled" Matthew's application to modify, finding that there had not been a material change in circumstances since the June 2011 modification.

In July 2013, Matthew filed a motion for a court order prohibiting Stephanie from visiting, contacting, or entering on the premises of Maddox's daycare. The court entered a temporary order in August and a permanent order in September (apparently upon Stephanie's agreement), excluding Stephanie from the premises of the daycare except to pick up Maddox at the commencement of her parenting time or to drop him off at the commencement of school.

On October 22, 2013, Stephanie filed an "Application to Modify Parenting Plan," alleging that there had been a substantial and material change in circumstances warranting a modification. Stephanie alleged that in the previous 2 years, Matthew had not exercised all of his parenting time and allowed Maddox to spend a minimum of six overnights per 4-week schedule with his maternal grandparents. Stephanie asked the court to modify the parenting plan to allow for a true "50/50, week on week off" parenting schedule. Matthew filed a responsive pleading and "cross complaint" on February 19, 2014. He denied the allegations in Stephanie's application and asked the court to dismiss the same. In his "cross

- 504 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

complaint," Matthew sought a modification of Stephanie's child support obligation on the basis that her earnings and earning capacity had increased such that application of the Nebraska Child Support Guidelines would increase her obligation by more than 10 percent.

On October 22, 2013, Stephanie also filed an affidavit and application for order to show cause, asking the court for an order requiring Matthew to show cause why he should not be held in contempt for failing to maintain health insurance on Matthew as ordered and for repeatedly violating the parenting plan. An order to show cause was entered on November 1, directing Matthew to appear and show cause why he should not be held in contempt; the contempt action was heard at the same time as the modification hearing on March 17, 2014.

On February 25, 2014, Matthew filed an application for an order to show cause, asking the court for an order requiring Stephanie to appear and show cause why she should not be held in contempt for failing and refusing to allow Matthew to have parenting time on December 27, 2013, from noon to 7 p.m. as set forth in the court-ordered parenting plan. An order to show cause was entered on March 5, 2014, directing Stephanie to appear and show cause why she should not be held in contempt; the contempt action was heard at the same time as the modification hearing on March 17.

The hearing on the modification and contempt actions was held on March 17, 2014. Stephanie appeared pro se. She was 37 years old at the time of the hearing and had been unemployed since December 2013, but said she was interviewing for property management jobs. In the past, she had been an assistant property manager and a dancer. At the time of the hearing, friends were helping her with her living expenses.

Stephanie testified about the difficulties she has had with Matthew. Stephanie testified that Matthew had made "significant" religious decisions without her input; she said that Matthew had Maddox baptized and chose godparents without her agreement and that Matthew did not inform her of

- 505 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

the ceremony. Stephanie testified that Matthew would not let Maddox participate in extracurricular activities such as gymnastics or soccer. She testified that Matthew violated her "phone visitation" with Maddox by not taking her calls, not returning her calls, or interrupting or distracting Maddox when she was able to speak to him. Stephanie testified that Matthew failed to involve her in day-to-day decisionmaking and that if she requested mediation, Matthew said that they had already mediated and did not need to mediate again, even if the issue was new. Stephanie also testified that Matthew had repeatedly failed to provide health insurance for Maddox and that even when Maddox was insured, Matthew would not provide her with the insurance cards, causing her to incur out-of-pocket expenses for doctor visits and prescriptions. Stephanie testified that she thought Maddox needed counseling or therapy, but that Matthew would not cooperate or allow Maddox to attend. Stephanie testified that Matthew would threaten her with contempt if she did not agree with him.

Stephanie testified that Matthew let her father and her stepmother, with whom Stephanie had a difficult relationship (collectively maternal grandparents), have Maddox 6 overnights a month and that she only got Maddox 10 overnights each month. Stephanie asked the court to award joint legal and physical custody, with a "50/50" "week on/week off" parenting schedule. Stephanie told the court she wanted the right of first refusal if Matthew was not going to use all of his parenting time; there was no right of first refusal referenced in the June 2011 parenting plan. She also wanted updated insurance and prescription cards for Maddox. Stephanie wanted Maddox to be able to participate in extracurricular activities with the parties splitting the cost. She also wanted regular "phone visitation" with Maddox without interruptions or distractions.

Matthew was 41 years old at the time of the hearing and was self-employed selling insurance. He has three other children

- 506 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

besides Maddox, who is the youngest. Matthew testified that he was not aware of any court order requiring telephone parenting time between Stephanie and Maddox, but that he had allowed it to take place. He testified that he had Maddox "conditionally baptized" because Maddox's school required a baptismal certificate for kindergarten and Stephanie never provided Maddox's certificate to him; he did not invite Stephanie to the baptism because she would not produce the certificate, she did not invite him to the original baptism, and he did not want a "scene."

Matthew testified that Maddox was not involved in organized extracurricular activities at the time; Matthew has three other children and has them all during the same parenting time and said "it's just not conducive to the schedules." Matthew testified that his other children were not involved in activities until they were older. Matthew said that extracurricular activities at Maddox's age were "nothing more than a glorified recess" and that Stephanie could take Maddox on her time but that he, Matthew, had too much going on. Matthew said that it was more important for Maddox to spend time with him than to be involved in activities.

Matthew testified that Maddox was covered by Medicaid as of the month of the hearing and that there had been a couple months when he was not insured. Matthew testified that Stephanie never notified him when she set up doctor or dental appointments for Maddox—he just got the bills later. Matthew did not give Stephanie insurance cards in the past because he was "tired of just getting the bills" and not being able to participate in appointments.

Matthew testified that Maddox did well in school and had a good relationship with his siblings. Matthew testified that Maddox's maternal grandparents provided before and after school care for Maddox and also transported him to and from school. Matthew testified that Maddox had a good relationship with his maternal grandparents and spent one to two nights a week with them (on nights when Matthew did not

- 507 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

have parenting time with his other children). Matthew testified that he could "pick and choose" who Maddox saw, spent the night with, and associated with during his parenting time and that he chose to let Maddox spend time with his maternal grandparents.

Matthew testified that it was difficult to communicate with Stephanie and that she went "out of [her] way to try and make [him] look bad." Matthew testified that the week on/week off schedule proposed by Stephanie was not in Maddox's best interests because the parties did not get along and because Matthew did not believe that Maddox should be exposed to Stephanie's "outside activities and lifestyle"—he specifically referenced Stephanie's friends and the fact that she could not provide for herself. Matthew said that he did not think Stephanie was a fit parent. He said that she was more concerned about being Maddox's playmate than a caretaker. Matthew wanted sole legal and physical custody. He said he would still attempt to discuss issues involving Maddox with her, even if there was not a requirement to do so.

Ardith S., Stephanie's stepmother, testified that she had a "distant" relationship with Stephanie since Maddox was 3 years old. She testified that Stephanie confronted people all the time so she and her husband had "back[ed] away" from her. Ardith testified that she had no concerns with Maddox living with Matthew. Ardith saw Maddox six overnights per month and before and after school.

Maddox's preschool teacher testified that she taught Maddox during the 2012-13 school year. She testified that Stephanie enrolled Maddox and paid his tuition. She further testified that Matthew said he did not want Maddox to attend preschool; however at some point, he said he did not want to be financially responsible but would allow Maddox to attend. Matthew told the teacher that Maddox would not be attending the preschool graduation; the teacher thought it would be good for Maddox to attend. Maddox did attend graduation with Stephanie, but Matthew did not attend. The preschool teacher

- 508 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

said that Stephanie was always available and was a supportive mother.

Maddox's kindergarten teacher for the 2013-14 school year testified that Stephanie was a "volunteer homeroom captain" and helped with classroom parties. She testified that both Matthew and Stephanie attended parent-teacher conferences, but that they came at separate times. She testified that Maddox had some struggles with reading, but was doing well overall. The teacher testified that Stephanie was interested in Maddox and wanted to help him. She also testified that Maddox's grandfather usually picked him up from school.

In its order filed on April 15, 2014, the district court noted that this was the parties' third attempt to modify the September 2008 decree and that the pending contempt motions were the fifth and sixth requests since March 2010. The district court stated that both parties were focused more on their issues with each other than on how to jointly parent their son. The court set forth two "strategies" or alternatives meant to eliminate the "constant turmoil and bickering" and to provide a better environment for Maddox, and asked the parties to weigh in on the proposed alternatives within 14 days. The first option was to establish a framework for separate parenting, with Maddox living with each parent for 6 months or 1 year at a time, with no parenting time for the parent with whom Maddox did not live. The second alternative was to place legal custody of Maddox with the court and appoint a guardian ad litem (GAL); all decisions, even day-to-day decisions such as whether Maddox should be kept home from school while sick, would have to be approved by the GAL or the court.

In an order filed on May 9, 2014, the court stated that both parties were opposed to both of the court's proposals, but neither party addressed the "root issue" the court sought to have addressed by the proposals. The court therefore entered a temporary order "with the hope that both parents can modify their behavior to permit co-parenting of Maddox." The court

- 509 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

ordered parenting time on a "week on week off basis" with exchanges to occur on Monday morning at school drop off, or 8 a.m. during the summer; there was to be no deviation or trading of parenting time, nor was there to be holiday, special occasion, or midweek parenting time. Legal custody of Maddox was placed with the court, and a GAL was appointed for Maddox; all decisions "which would possibly impact Maddox during the other parent's parenting time" were to be made in writing by the GAL or by order of the court. The court ordered the parties to attend counseling together with Dr. Rick McNeese. A further evidentiary hearing was set for November 17.

At the further evidentiary hearing on November 17, 2014, both parties testified, as did the GAL. Matthew testified that the parties had been following a week on/week off parenting time arrangement since the temporary order was filed on May 9. When asked if it was his preference to do a "9/5" schedule as set forth in the June 2011 order, Matthew said, "No. I mean I — well, I'm agreeable with, you know, certain stipulations to 50/50 parenting time, but I do think that, you know, with that being said that someone ultimately needs to be the final decision maker[.]" Matthew's proposed parenting plan was received into evidence and proposed week on/week off parenting time with transitions to occur Sunday at 7 p.m.; he also proposed that he have the "final say" on all decisions except for which extracurricular activities that Maddox would be involved in (however, he was not to be involved in more than one activity per season). Matthew testified that Maddox had adjusted to the week on/week off arrangement and that such was in Maddox's best interests.

Stephanie also testified that she was willing to continue a week on/week off parenting arrangement and that Maddox had "[a]bsolutely" adjusted to that arrangement. Stephanie testified that she would like to make legal decisions for Maddox and would like to use the GAL to resolve issues instead of always filing in court.

- 510 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

Matthew testified that the parties had met with Dr. McNeese 12 to 15 times and were working on communication, respect for each other, and keeping Maddox out of the middle of things. Matthew believed that he and Stephanie could agree on issues involving Maddox. Stephanie testified that she tried to follow Dr. McNeese's recommendations when communicating with Matthew. She testified that they have continued to have issues since May 2014; she specifically referenced an occasion in July when Matthew was dropping Maddox off, and because Stephanie was not there exactly at 7 p.m., Matthew left and kept Maddox overnight—and he would not return her calls or e-mails until the next day. Stephanie testified that Matthew "enjoy[ed] playing games and manipulating things such as drop-off times."

The GAL testified that she believed that a week on/week off parenting time arrangement was appropriate and that Dr. McNeese agreed. She testified that the problem with the parties was that it was always a power struggle—who was in control and who had the power—and that Dr. McNeese was working with them on that issue.

Stephanie testified that she had been employed as a leasing consultant since September 2014 and that no one really helped her with her expenses now that she was working.

In its order filed on January 7, 2015, the district court noted that it had been 7 years since the case was originally filed and that both parties were still focused more on how to frustrate each other than on how to jointly parent their son. The court concluded that a parenting plan designed to minimize the need of the parents to communicate with, or have contact with, one another was in Maddox's best interests.

The district court maintained the joint legal and physical custody of Maddox with the parties. The court modified the parenting time to reflect a 50-50 split with a weekly rotating parenting time schedule; the court specifically stated there was not to be a separate holiday or special occasion schedule, except to provide that Maddox would be with Stephanie on

- 511 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

Mother's Day and Matthew on Father's Day and to provide time for each parent at Christmas. The court ordered that the party having parenting time be the short-term decisionmaker for Maddox; ordered Stephanie to be the final decision-maker with regard to extracurricular and sporting activities and recurring or long-term medical, dental, and eye care needs; and ordered Matthew to be the decisionmaker with regard to Maddox's education and religious upbringing. The court ordered Matthew to pay $90 per month in child support. The court ordered Matthew to provide Stephanie with medical, dental, and eye care insurance cards for Maddox, and in the event he fails to provide such cards, he shall be solely responsible for the entirety of any medical, dental, or eye care provided to Maddox while in Stephanie's care. The court made further provisions, but such are not related to this appeal. The court also denied all requests for a finding of contempt.

Matthew timely appeals the district court's order.

## ASSIGNMENTS OF ERROR

Matthew assigns that the district court erred in (1) finding that a material change of circumstances existed and by modifying his parenting time from 9 to 7 days per 14-day period and (2) determining that joint legal custody was in Maddox's best interests.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[2] Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of

- 512 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

discretion. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

[3,4] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

[5] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

### Modification of Parenting Time.

Matthew argues that the district court erred by (1) finding that a material change of circumstances existed to modify the parenting plan and (2) reducing his parenting time from 9 to 7 days per 14-day period. Matthew contends that Stephanie sought modification of the parenting time based on the amount of time Maddox spent with his maternal grandparents and that this does not constitute a material change affecting Maddox's best interests. Further, Matthew argues that the parties' difficulties in communicating and coparenting could not form the basis for modification because "these issues were contemplated at the time that the previous order was entered." Brief for appellant at 16. Additionally, Matthew asserts that the district court "did not provide any justification why reducing [Matthew's] parenting time is in Maddox's best interests." *Id*. at 18. Therefore, "because the District Court's modification was not precipitated by a change in circumstances and because there was not adequate justification to reduce [Matthew's] parenting time, the District Court abused its discretion." *Id*. We disagree.

- 513 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

[6,7] The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. See *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001). The right of parenting time is subject to continuous review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. See *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

The record before us and the district court's thorough order addressing the ongoing contentiousness between the parties reveals no abuse of discretion by the district court in modifying the parenting plan. The district court discussed the extensive 7-year history of litigation between the parties and stated in its order:

> The efforts at finding the opposing party in contempt of court have been sprinkled throughout this time, but primarily have found their way to the file near the time the complaints to modify have been filed.
>
> So, here we are, yet again, seven years after the case was originally filed with both parties still focused more on how to frustrate each other than on how to jointly parent their son. . . .
>
> It is not unusual that parents of a child involved in a divorce or paternity case begin the case having the mis-perception that they are ridding themselves of the other parent once and for all. So their rocky start was not so unusual. Most typically, after a few months or a couple of years, the parents figure out they are not ending a relationship with the other parent, they are merely reconfiguring it. Thankfully, it is seldom that after seven years, common sense and focus on the child does not prevail. Usually, parties fall into a pattern of conduct that works for them to raise their child free from interference or supervision by the courts. It has now been seven years and [Matthew] and [Stephanie] have been unable, and in some aspects unwilling to find that pattern.

- 514 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

The adverse impact the parties' continued turmoil is having, and is likely going to have on Maddox in the future, has become a critical concern. . . .

. . . .

After considering all the evidence, the court has concluded that a parenting plan which is designed to minimize the need of the parents to communicate with, or have contact with, one another is in the best interests of Maddox at this time.

Clearly, at the time of the original decree and the initial modification, the district court did not anticipate that the parties would continue to engage in court battles over their son, as noted in the court's order set forth above. This was the parties' third attempt to modify the September 2008 decree, and the pending contempt motions were the fifth and sixth requests since March 2010.

In our de novo review, we conclude that there was a material change in circumstances affecting Maddox's best interests, namely, that his parents, who in the course of 7 years rarely agreed on anything, needed a modified parenting plan that would minimize opportunities for ongoing conflict. As the district court pointed out, it is "not unusual that parents of a child involved in a divorce or paternity case" may have a "rocky start," but that "typically, after a few months or a couple of years, the parents figure out they are not ending a relationship with the other parent, they are merely reconfiguring it," and the "parties fall into a pattern of conduct that works for them to raise their child free from interference or supervision by the courts." But in this case, even after 7 years, Matthew and Stephanie "have been unable, and in some aspects unwilling to find that pattern."

As to Matthew's argument that the district court failed to justify the reduction in Matthew's parenting time from 9 to 7 days per 14-day period, we note that the district court acknowledged the parties' agreement to a 50-50 split with a weekly rotating parenting time schedule. The record shows

- 515 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

that at the time of the further evidentiary hearing on November 17, 2014, the parties agreed to 50-50 parenting time; in fact, Matthew's proposed parenting plan to the court on that date proposed week on/week off parenting time. Matthew testified that Maddox had adjusted to the week on/week off arrangement and that such was in Maddox's best interests.

In light of Matthew's proposed parenting plan and his own testimony that the week on/week off parenting time was in Maddox's best interests, Matthew cannot now assert that it was error for the district court to adopt such an arrangement. See, e.g., *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (party cannot complain of error which party has invited court to commit). See, also, *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

That said, we also agree with the district court's finding that there is "no substantially greater fault with one party or the other sufficient to warrant either more or less parenting time or parenting responsibilities. Likewise, neither party is such a better parent than the other to warrant favored treatment." The equal sharing of parenting time was agreed to by the parties and supported by the record. Accordingly, we find that the district court did not abuse its discretion in modifying the parenting plan to provide for an equal split of parenting time with a weekly rotating schedule.

*Joint Legal Custody.*

Matthew argues that the district court erred in determining that joint legal custody was in Maddox's best interests. He contends that since the district court observed that "the parties' inability to communicate has made effective co-parenting nearly impossible to achieve," then joint custody cannot be in a child's best interests, and sole custody should have been awarded. Brief for appellant at 20.

We first note that Matthew's "cross complaint" did not seek a change in legal custody, but that at the initial hearing on the modification and contempt actions held March 17, 2014,

- 516 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

Matthew testified that he should be awarded sole legal and physical custody. However, in Matthew's proposed parenting plan submitted to the court at the further evidentiary hearing on November 17, Matthew proposed joint legal custody (which the parties already had), but that he wanted final say in all decisions except extracurricular activities. Therefore, joint legal custody was maintained as requested by Matthew; and we conclude that Matthew's dissatisfaction with how the court divided the decisionmaking authority does not mean the court abused its discretion.

[8,9] The Parenting Act defines "[j]oint legal custody" as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2014). We acknowledge that courts typically do not award joint legal custody when the parties are unable to communicate effectively. See, *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009) (joint decisionmaking by parents not in child's best interests when parents are unable to communicate face-to-face and there is level of distrust); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (no abuse of discretion by district court's failure to award joint custody when minor child was confused by temporary joint legal and physical custody arrangement and parents had hard time communicating with one another). However, a trial court's decision to award joint legal or physical custody can be made without parental agreement or consent so long as it is in the child's best interests. Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2014) states:

Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both,

- 517 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

is in the best interests of the minor child regardless of any parental agreement or consent.

And § 42-364 applies to custody disputes in paternity actions. See *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981).

Given that the GAL testified that the problem with the parties was that it was always a power struggle—who was in control and who had the power—we cannot say that the district court abused its discretion by maintaining the joint legal custody previously agreed to and awarded by the court in its June 22, 2011, order. The district court appropriately modified the parenting plan to specifically divide joint legal custody responsibilities between the parties in a manner that would minimize contact and conflict between them. Similar to the court's decision to allocate parenting time equally between the parties, it is clear that the district court also chose not to favor one parent over the other with regard to legal custody, since as it stated, neither parent warranted more or less parenting responsibilities than the other, nor did either parent warrant favored treatment. We agree with the court's assessment.

In its order, the district court stated that "a parenting plan founded on cooperative parenting, the preferred type, is not possible to be accomplished and further efforts at doing so is not in Maddox's best interest[s]." However, the court went on to state:

> Obviously, there are some things about which the parties must be required to communicate and have contact. Matters such as health and medical care and procedures, choice of school and religious matters, and involvement in extracurricular activities. However, one of the parties should be designated as the party who will make final decisions when it comes to these matters if a mutual agreement is not found.

The court ordered that the party having parenting time be the short-term decisionmaker for Maddox; ordered Stephanie to be the final decisionmaker with regard to extracurricular

- 518 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

and sporting activities and recurring or long-term medical, dental, and eye care needs; and ordered Matthew to be the final decisionmaker with regard to Maddox's education and religious upbringing. The court stated, "It is hopeful that by minimizing the amount of contact and communication the parents have through collateral parenting, they can find a means of cooperative parenting that is no longer disruptive to Maddox." Ultimately, by dividing responsibilities and designating which parent had the final say with regard to certain decisions, the court minimized the potential for conflict and the ongoing power struggle between the parties—something that is certainly in Maddox's best interests. We also point out that the court maintained the goal of "mutual agreement" between the parties as set forth in the above-quoted language; only now, the final say as to certain major issues rests with the designated parent if they cannot otherwise agree. This division of final say allows both parties to assume a primary role in decisionmaking for Maddox and avoids favoring one parent over the other, or giving one parent all the control over the other, which the district court clearly sought to avoid.

As previously stated, we recognize that appellate review of joint legal custody issues has often focused on the parties' ability to communicate. See, *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009). However, appellate courts review custody decisions for an abuse of discretion and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). See, also, *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014). In affording such deference to the trial courts, appellate courts have in some instances declined to reverse trial court decisions where joint custody has been awarded or maintained even when the evidence demonstrates a lack of communication or cooperation between parents.

- 519 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
STATE ON BEHALF OF MADDOX S. v. MATTHEW E.
Cite as 23 Neb. App. 500

For example, in *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015), the Nebraska Supreme Court affirmed a district court's denial of a father's request to modify custody from joint legal custody (mother with physical custody) to sole legal and physical custody despite an apparent inability of the parties to parent cooperatively with one another. Despite finding, among other things, "'[t]hat both parties fail to appropriately communicate in regard to the child, which has caused numerous, unnecessary, problems for both parents,'" the district court nevertheless determined that there was not a change in circumstances warranting modification of custody and that a change in custody was not in the child's best interests. *Id.* at 85, 871 N.W.2d at 242. Our Supreme Court affirmed, stating: "Given the record in this case, and given our standard of review and deference to the trial court's determinations with respect to the credibility of the witnesses, we cannot say that the court's denial of the modification of custody was clearly untenable or an abuse of discretion." *Id.* at 87, 871 N.W.2d at 243.

Likewise, in *Kay v. Ludwig*, 12 Neb. App. 868, 686 N.W.2d 619 (2004), this court affirmed a district court's award of joint legal custody, with physical custody of the parties' minor son awarded to the mother, despite the failure of the parties to agree on joint legal custody. The mother appealed the joint legal custody award; her testimony at trial revealed that communication between herself and the father "had been nearly nonexistent and that they have had a number of confrontations since the separation." *Id.* at 873, 686 N.W.2d at 624. The mother further testified that she was frightened of the father, that he "had become enraged, used profane language, and verbally harassed her," had slammed a door, thrown a telephone, thrown a kitchen table and chairs, and made menacing telephone calls and left a menacing message, among other allegations. *Id.* at 877, 686 N.W.2d at 626. Importantly, in *Ludwig*, this court noted concern that giving the mother sole legal custody along with primary physical custody might

result in the mother not fostering the relationship between the father and their son in the manner contemplated by the Parenting Act.

Similarly in the case before us, we give deference to the district court's attempt to find a workable solution to best protect Maddox's best interests. Because of the power struggle between the parties, the district court was not willing to favor one parent over the other in allocating parental responsibilities or parenting time. Although still encouraging mutual decisionmaking, the court's specific division between the parties as to who has final say on the larger child-rearing decisions splits the parenting "control" and will hopefully minimize conflict between the parties. While such a uniquely tailored joint custody resolution is without precedent, we cannot say the district court abused its discretion given the facts of this case.

Accordingly, upon our de novo review of the record, we find that the district court did not abuse its discretion in maintaining the joint legal custody previously ordered, and in more specifically defining and allocating the responsibilities between the parties.

## CONCLUSION

For the reasons stated above, we affirm the district court's modification of the parties' paternity decree.

Affirmed.